Good morning. May it please the Court, I'm Deputy Attorney General Michael G. Lee, here for the State Appellate's, Graham, et al. Your Honor, I'd like to reserve three minutes of my time for rebuttal, if that's possible. In this appeal, the issue before the Court is whether or not the 150% fee cap incorporated in the Prison Litigation Reform Act applies to any case wherein damages are awarded by a jury. The second issue would be whether or not the District Court properly limited the fees awarded to the effort necessary and reasonable to achieve the results in the case. And thirdly, whether the fees were proportionate in regard to the degree of success in the case. In regard to the first issue, the 150% fee cap, from all intents and purposes, the District Court apparently read the word whenever out of the statute. The statute seems to be very clear on its face. The word whenever means what it says, whenever. At any time that there are damages awarded, then the fees cap applies. Does that make sense? In other words, let's say you have nominal damages of a dollar, but you have injunctive relief that's tremendously valuable. Does it make sense to limit attorney's fees to $1.50? Does it just make sense? I would say, based on the intent of Congress, it does make sense. And I would also say it makes sense in the what is likely to happen in a case. If you have, for example, a trial, and after the trial, a jury decides that a nominal damages should be awarded to the plaintiff, what's been established is that there was really no injury. There was a violation of a right. And it takes us back to the Supreme Court case Kerry v. Pythas, wherein this whole question of what kind of relief should be given to a party whenever a constitutional violation is established. There the Supreme Court decided that you have to establish real damages in order to be able to receive anything above and beyond nominal damages in any case. And this case, I think, is a very good example of how this statute would apply, and will most likely impact the case. Because you had a request for a lot. The request was for five Some were dismissed on summary judgment, went to trial on two. After a trial, the jury filed against four people out of the 11. It filed on one cause of action out of the five. The injunctive relief that was possible at that point was simply to remove a handful of documents from a file. And the fact was that the totality of the injunctive relief in this case? Yes, it was. Well, there was no order as to revision of the so-called Regulation J? No, not in this case. I may have a different case in mind then. I'm sorry. In this case, the Oh, I'm sorry. That's a Wednesday case. I have a mind that raises the same issues. You're absolutely right. I apologize for disconcerting you. But getting back to your other point, if a person, for example, sues for deprivation of a constitutional right to practice religion, to have religious practices, that may be very difficult to quantify in terms of dollars, right? You may give a small dollar award because the person couldn't practice his or her religious faith in a prison. Why would it be very small? But it might be extraordinarily meaningful to have an injunction which would say that that person should, that the prison itself should permit religious practices to go forward. Are you saying it was Congress' intention not to make that compensable in terms of attorney's fees? Did they say that somewhere? Well, the Congress, in terms of what it said with regard to how to apply the statute, it didn't say. However, in terms of its intent with regard to the impact that the fees provisions would have on litigation, it did say. It seemed to say fairly clearly that what we want to do is we want to impose a disincentive on cases wherein you have cases that go to trial, but the relief that's awarded is going to be minimal. The case is insubstantial in terms of the relief that's ordered, but that's arguing the result. If it's the money that's awarded, yes, then that's, if you say that's the relief, yes, you've argued the result. But what if the relief is much broader than that? What if the relief is a very meaningful injunction or changing a prison? Let's say you had four prisoners in one cell, so you decided, okay, that's unconstitutional, that's a cruel, unusual punishment. We'll put, we want one prisoner to a cell or two prisoners to a cell. That may be enormously valuable, but not, you know, you don't look at the Four Seasons to try to figure out what they charge room rents at. I mean, there's no way you're going to be able to compensate it in a dollar sense that may withstand some scrutiny. So doesn't it have some value? Well, I think not, because, Your Honor, in the typical case that we're talking about where you're going to have massive injunctive relief, it's a class action. And in a class action, of course, the lawyers are going to bring the case. If they win on the case, you're going to have prison-wide or system-wide injunctive relief that is extremely meaningful in view of the litigation. But if we're talking about one person, one individual, the relief that's awarded, whether it's damages or injunctive, is really limited to that one person. Although with respect to this particular defendant and not here, criminal, this particular civil rights plaintiff, as I understand it, the problem with having the material in his file may well have led to his not being granted parole and may well have led to an additional two years of incarceration. That's a, you know, that's real stuff. That would be true if that was the case, but that was not the case here. In fact, Your Notation, that will come back with a clean file next time? He was denied parole. However, we went through all of this at the trial. We had to have a big discussion in regard to striking certain testimony from the record, and the testimony that was stricken from the record had to do with that issue because that was a misrepresentation of the record. There was a mistake that was made by some person in regard to click-checking when you read the order. The order doesn't relate anything to that. The panel said that they denied parole because, in their judgment, this person was not ready for parole at the time. There was no reference whatsoever to this transfer to San Quentin, which, as a matter of fact, in the transfer documents, was noted as being non-adverse. Maybe you and I are talking across, kind of passing the night here. My understanding is that he was denied parole and that there was a notation at the time that he was denied parole that would give some cause to believe that it was because he had an ad seg notation in the file. Am I wrong about that, or is the record somehow misleading that we have in front of us? The record is misleading that you have in front of you, yes. And there's something outside the record that you want to use to correct the record? Well, I did not because, as we pointed out, we were not, the facts were not germane to our appeal. I understand. Okay. Okay. That's the only reason we didn't put that in there. Okay. Let me ask you... If the Court is interested, I do have the transcript. I can provide that to the Court. No, I think you may be right in some sense that it is irrelevant because we have injunctive relief. I'm not sure it's up to us to decide how important the injunctive relief is with respect to the award of attorney's fees. It's rather more a statutory question that if this relief is sufficiently important to allow fees, is that enough to award the fees or do we have to pay attention to the whenever clause as a limitation? So that's a legal question, and I may agree with you. Let me ask you this with respect to the statute. The statute proceeds in two parts. It's first under attorney's fees in subsection D of 1997E. The first subsection under subsection D is A that talks about relief without regard to whether it's injunctive or damage. It just simply says relief, and it says that the amount of the fee must be, and I quote, proportionately related to the court-ordered relief, again, without differentiating between damages and fees. In the subsection C that speaks specifically to damages, it says whenever a monetary judgment is awarded, why would it not seem to be most in accordance with the overall scheme of this statute to sort of infer into these words, whenever a monetary judgment is awarded, fees with respect to the damage award shall be limited? Well, because that's not the way it's written. And as I understand the canons of instruction, unless the statute is unclear, you apply the statute in the way that it's written. And if there's any ambiguity, then what the court looks at is the common usage of the term. And in this regard, the common usage of the term whenever would apply to all cases. And our position is even if you say that whenever in this case means if, it would still apply. Our questions have taken you over your time, but I will give you a couple of minutes for rebuttal. Thank you. Thank you. Thank you for your argument. Counsel? Thank you, Your Honors. That pleases the Court. Ronald Mellish for John Dannenberg, Respondent and Plaintiff. Let me first mention, if I may, Your Honors, that I did not make in argument any appeal of the issue of the efforts and proportionality of the attorney's fees used to obtain the judgment in this case. Having reviewed the appellant's opening brief, I find that it's not mentioned. I believe the only issue before the Court on appeal is the applicability of the PLRA to the fees, not the justification for the fees. And Judge Moulds already went through on a very detailed basis, examined the fee bill, which was very detailed, and determined that the fees were necessary and reasonably expended. But there were some claims that weren't successful, right? That's correct, Your Honor. Are you saying that it's not on appeal? We shouldn't take into consideration that there seemed to have been no reduction in the fees for the failed claims? Yes, Your Honor. Precisely because Judge Moulds has already done that, and he was the trial judge and was in a position to determine that the fees expended were necessary and reasonable for the relief obtained. In other words, even without the... How do we review that? In other words, how do we... he may have been... Number one, he may have done it. And number two, he may have done it correctly. The question I have is what do we look at to see that he did it correctly? I would look at the fee bill itself, Your Honor. I don't think it's before you to review. But if you wish to review it... It is part of the record. It is part of the record. It is there, definitely. And then the bill is there, and it is extremely detailed. Is there someplace in Magistrate Judge Moulds' findings a specific reference to reducing the total amount of fees based on the lost claims, the unsuccessful claims? I don't believe so, Your Honor. If there is, I don't recall it as I stand here now. I guess it doesn't address that specific issue, but he does find them reasonable and necessary. I can further tell the Court that since I am the one who personally expended the fees, that the difference, if you will, had we not begun with some of the claims that were later dismissed through summary judgment, would be de minimis, if anything at all. I can further point out to the Court, as is pointed out in our briefs, that until the very day of trial, the State did not acknowledge that prisoners had designed, installed, and maintained the alarm systems at CMC Vacaville. The fact that they refused to acknowledge that until their opening argument required an inordinate amount of attorneys' fees and time to be spent deposing multiple prisoners and other parties, including one employee, who the State would not identify that we had to locate through an investigator and then depose to establish this very basic fact, which was then acknowledged at trial. So, just as a matter of equity and justice, a large, large percentage of these fees are self-inflicted. It was known to everyone at the beginning that prisoners had installed, designed, and maintained the alarms at this prison. And had that been acknowledged as a fact to begin with, many of these fees would not have even been incurred. Does Judge Mould's deal with this? We brought it up, but he doesn't... What you've just described? No, I don't believe he mentions it in his order, Your Honor. But it was, again, that simply appears from the record. I will point out page 6 of Judge Mould's order. He writes, As noted above, defendants contend that Plaintiff is not entitled to compensation for any time spent on his interference with court access claim or his claim of deliberate indifference to serious medical needs. Throughout this litigation, Plaintiff's principal contention has been... In other words, he does acknowledge... Thank you, Your Honor. ...that there are a couple of claims that got dismissed, but as far as he's concerned, the principal claim was the one in which he got his relief. Well, I thank you, Your Honor. I did recall that. That's a specific language. And certainly, that is our position, that the entire thrust of this case was to obtain the injunctive relief to remove the negative comments, all negative papers, and to refer them as a handful of documents as if they have limited significance. Again, belies the fact that these documents have been used and have continued to be used since trial to keep John Dannenberg from obtaining parole to which he might otherwise be entitled, except for the incidents that involve this lawsuit. He is disciplinary free. Even if the parole board had not checked the famous box, he should become disciplinary free. The mere existence of these documents in the file is sufficient to create an atmosphere of prejudice against him when he goes before the board, and it was extremely significant. In fact, it was our only goal, main goal, to remove those documents from his file that were improper so that when he goes before the parole board, he has a clean record, as it were, showing, in fact, a disciplinary free career in prison. When the complaint was originally filed in the district court in this case, were you involved, or did he draft it initially? I drafted it, Your Honor. I see. Okay. Could you address not the amount of fees, but the ability to get them at all without respect to the whenever clause? I mean, that's the serious statutory question here in front of us. Yes, Your Honor. And I think there was a recent case out of the First Circuit, Cody v. Hilliard, from late 2000, 304 F. 3rd, 767. It's 776. Isn't your brief? It is not, Your Honor. At the end of the argument, can you provide a slip to the clerk with a citation? Yes, Your Honor. Give your opponent a copy. Indeed, Your Honor. Where the court speaks approvingly of the Ada case, which we have cited. I'm sorry. I had it right in front of me until I wanted to quote it. Sorry, that's why I couldn't find it. I had the wrong case. I'm sorry, Your Honor. Where the court talks about statutes, I quote, Statutes are to be interpreted as a whole. In particular, courts should not interpret one provision in a manner that renders other positions meaningless. And it states that a reasonable reading of the statute accomplishes this. Under the PLRA, attorneys' fees can be awarded in a prisoner civil rights case only if the prisoner proves an actual violation of rights protected by a relevant statute. Once a violation has been proven, later work is compensable if it is directly and reasonably incurred in enforcing the relief ordered for the violation. And then it accords with the Webb vs. Ada County case that we cited in our brief. I believe that a reading of the two subsections of 1988, subsection ED, subsection 1 and 2, compels the result that would not make any sense otherwise to state that you get no attorney's fees if you achieve significant declaratory relief protecting valuable constitutional rights. But you can obtain attorney's fees if you obtain one dollar in damages. Well, how about the following? That is, assuming that you lose, that is to say, assuming we say the whenever clause simply sweeps everything else away, is it available to you to waive any damages and simply go forward with the injunctive relief claim? Or would that be in some fashion inconsistent with your obligation of the client if he has a valid damages claim? As yours clearly did here. I mean, he recovers $9,000 of which $2,500 are punitives. I mean, you had a real claim. Absolutely, Your Honor. And as the Court may have noticed, his out-of-pocket damages were $1,000. So the damages were very much in relation to his actual damage. But to answer your question, I believe you are correct. I would have an obligation as an attorney to the client to press the claim for damages. However, it would force the client to be in a position where I would have to tell him if the State's position is correct, you must give up your claim for damages and go forward only on the constitutional claim. Because if you get $1 awarded for damages... And my obligation to you as an attorney is to go forward and seek your claim for damages because you have a right to it. On the other hand, my obligation to you as an attorney is I don't have to work for you one way or the other. If there's no fee, I can't work for you. Bye. You're correct, Your Honor. Okay. That doesn't make much sense, does it? No. And that's exactly the position that Mr. Dannenberg finds himself in. He's extremely fortunate in that he had the funds to fund this litigation, at least up to some point. But you're right. If someone was seeking to go forward on a contingent fee basis, it would result in a very difficult time for any prisoner to find an attorney to work even on a meritorious case. Okay. I think we understand your argument. Thank you, Your Honor. Two minutes for rebuttal. I'd just like to address two or three things. Initially, in regard to the principally word where the magistrate judge explained his reason for not reducing the fees, the statute doesn't provide for that. Neither did Section 1988 prior to the enactment of the Prison Litigation Reform Act. In regard to the argument about what the state did and the state didn't do, the state agreed with Mr. Mellish that certain witnesses could be videotaped for deposition purposes so that the state wouldn't have to transport an inordinate number of inmates from San Quentin and other prisons who were not involved in the case. The employee who had once worked for the Department of Corrections was not any longer working for the Department of Corrections at the time of trial. That's the reason why we couldn't accept service for her. We didn't know where she was any more than he did. In terms of the injunctive relief that was awarded in this case, I believe it's pretty clear from the record that the complaint sought a lot more than what was awarded. The complaint itself established the parameters of this case, and it established what the parties were in fact looking for and once one goes to the motion for summary judgment, take a look at the motion for summary judgment which was granted to the state, that tells you right off that there were a significant number of hours put into this case that had nothing to do with achieving a relief that was ultimately granted to the plaintiff. With that, Your Honor, I'd like to close and I'd ask that the court remand this matter to the district court for appropriate application of the fee statutes. Thank you. Thank you, counsel. Thank both sides for their argument. The case, it is argued, will be submitted for decision.
judges: Hawkins, W.fletcher, Breyer